UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| GREGORY FRANKLIN PARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:11-CV-365 |
| | ) | (VARLAN/SHIRLEY) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 11 and 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 13 and 14]. Plaintiff Gregory Franklin Partin seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On August 22, 2008, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began March 2, 2007. [Tr. 50]. After his application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On March 25, 2010, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 27-49]. On June 11, 2010, the ALJ found that the Plaintiff was not disabled. [Tr. 11-22]. The Appeals Council declined the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the

Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

I.  **ALJ FINDINGS**

> The ALJ made the following findings:
>
> 1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2010.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 2, 2007, through his date last insured of March 31, 2010 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine, diabetes mellitus, hypertension; depression and anxiety (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). In addition, he would be able to do no more than occasional postural activities including climbing, stooping, bending, crouching, and crawling. He could do no uninterrupted sitting or standing to exceed 45 minutes. He would be limited to simple instructions and no more than frequent operation of foot controls with the right lower extremity.
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on January 6, 1966 and was 44 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

2

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 2, 2007, the alleged onset date, through March 31, 2010, the date last insured (20 CFR 404.1520(g)).

[Tr. 13-22].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

3

experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).  Plaintiff bears the burden of proof at the first four steps.  Walters, 127 F.3d at 529.  The burden shifts to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

4

Case 3:11-cv-00365-TAV-CCS   Document 15   Filed 03/23/12   Page 4 of 12   PageID #: 75

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was

5

reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

### IV.    POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, the Plaintiff argues that the ALJ erred by not affording proper weight to the findings of Richard R. Burdeaux, M.D. [Doc. 12 at 7].

The Commissioner responds that the ALJ's decision was supported by substantial evidence. The Commissioner maintains that the ALJ considered the evidence in the record and included the documented impairments in the residual functional capacity finding. The Commissioner argues that the ALJ complied with his statutory obligations as imposed by 20

6

C.F.R. § 404.1527(d). [Doc. 14 at 9].

## V. ANALYSIS

Dr. Richard R. Burdeaux was Plaintiff's treating physician from October 23, 2003 through October 29, 2009. Conditions and complaints addressed include chronic low back pain radiating into the hip and right lower extremity secondary to degenerative disc disease, abdominal pain, hematuria, chronic neck pain radiating into the left arm, chest pain, hypertension, GERD, weakness, osteoarthritis, high cholesterol, diabetes mellitus, peripheral neuropathy, bilateral foot pain, foot lesion, kidney stones, shortness of breath, and general malaise. [Tr. 230-383, 391-396, 429-430, 473-474, 607-620].

On November 16, 2005, nerve conduction studies of the upper extremities, ordered by Dr. Burdeaux, were suggestive of a proximal left ulnar neuropathy (typically at elbow), a left brachial plexopathy, or a left C8 and T1 radiculopathy. Cervical spine x-rays yielded the impression of loss of normal cervical lordosis, likely due to muscle spasm, and tiny partially detached spur along the anterior inferior aspect of C5 [Tr. 263-270]. On December 1, 2005, MRI showed mild degenerative change in the cervical spine [Tr. 261]. On December 20, 2007, MRI of the lumbar spine revealed a small focal protrusion into the inferior right foramen at L5-S1, with the right inferior foramen mildly narrowed, and moderate facet degenerative changes at L4-L5 [Tr. 258].

On December 31, 2008, chest x-rays showed hyperinflation with post inflammatory scarring and evidence of old granulomatous disease, mild compressive atelectasis in the left lung base, and mild plaque in the aorta. The impression was COPD with post inflammatory changes [Tr. 473].

On March 11, 2010, Dr. Burdeaux completed a form entitled "Medical Opinion re: Ability to Do Work-Related Activities (Physical)," [Tr. 675-77]. This three-page form consisted of a variety of multiple-choice and short-answer questions for Dr. Burdeaux to answer. Dr. Burdeaux indicated that the Plaintiff can: lift/carry a maximum of ten pounds; stand/walk for a total of less than two hours during an eight-hour day, 15 minutes without interruption; and sit for a total of less than two hours during an eight-hour day, 15 minutes without interruption. He indicated that the Plaintiff would need an opportunity to shift at will from sitting or standing/walking and will sometimes need to lie own at unpredictable intervals during a work shift. [Tr. 675].

Dr. Burdeaux indicated that the Plaintiff: could never twist, stoop (bend), crouch, climb stairs, or climb ladders; is limited in his ability to reach (including overhead) and push/pull; should avoid all exposure to wetness, humidity, and hazards (machinery, heights, etc.); and must avoid concentrated exposure to extreme cold, extreme heat, and noise. [Tr. 676]. When asked how often he believed the Plaintiff's impairments would cause her to be absent from work, the ALJ checked the box indicating that she would be absent more than three times per month. [Tr. 677]. Dr. Burdeaux explained that the Plaintiff's overall mobility will be restrained in "any type of movement be it squatting/crawling/balancing/etc." [Tr. 677].

The ALJ reviewed the Plaintiff's treatment record with Dr. Burdeaux extensively, starting with the Plaintiff's treatment in March 2004 [Tr. 16], continuing through 2007 [Tr. 18], and up to March 11, 2010, when Dr. Burdeaux completed the form discussed above. The ALJ reviewed each of the findings made by Dr. Burdeaux in the form. [Tr. 19]. The ALJ ultimately concluded that the Plaintiff could perform the full range of light work, except that he would be limited in his postural activities such as climbing, stooping, bending, crouching, and crawling.

8

[Tr. 14]. To the extent that the limitations indicated by Dr. Burdeaux exceeded this residual functional capacity determination, the ALJ did not credit them.

The ALJ explained his reasons for affording only limited weight to Dr. Burdeaux's findings by stating:

> The undersigned does not find Dr. Burdeaux's determinations fully probative with [] regard to the claimant's ability to do work related activities. His conclusions are inconsistent with his examinations and are not supported by the objective medical findings or treating progress notes of record. He has found only tenderness and decreased range of motion of the lumbar spine. X-rays showed only minimal degenerative changes and no evidence of a herniated disc. His conclusions are tenuous and not supported by current objective findings. He did indicate that the focal protrusion *could* put pressure on a nerve root, yet his latest MRI showed only *minimal* disease. The claimant has testified that he has been depressed, yet often when seen by Dr. Burdeaux he denied being severely depressed. When discharged from pain management in November 2009, he was noncompliant with his medication, he was obtaining medication from another individual and in August 2009, he tested positive for opiates. His guarded testimony when questioned about his course of treatment at the pain clinic does little to enhance the credibility of his subjective complaints.

[Tr. 20].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole,

the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

In this case, the Plaintiff argues that the ALJ erred in evaluating Dr. Burdeaux's opinion under 20 C.F.R. § 404.1527. In his brief, the Plaintiff reviews his medical treatment with Dr. Burdeaux extensively, but he does not direct the Court to any specific portions of the treatment that would undermine the ALJ's rationale for discounting the opinion. The Court has considered the Plaintiff's argument and finds that it is not well-taken.

The ALJ found that Dr. Burdeaux's opinions "are inconsistent with his examinations and are not supported by the objective medical findings or treating progress notes of record." [Tr. 20]. In support of this finding, the ALJ noted that: Dr. Burdeaux's progress notes indicated only tenderness and decreased range of motion in the lumbar spine; X-rays showed only minimal degeneration and no herniation; and MRIs showed only minimal disease. The ALJ, therefore, found that the opinions were not entitled to controlling weight under 20 C.F.R. § 404.1527(d)(2).

Having found that the opinion was not entitled to controlling weight, the ALJ considered the factors identified in 20 C.F.R. § 404.1527(d)(2)-(6). The ALJ discussed: the lack of supportability of the opinions by noting their tenuous nature, § 404.1527(d)(3); their inconsistency with the record as a whole and Dr. Burdeaux's progress notes, § 404.1527(d)(4); and other factors tending to support or undermine the findings including the Plaintiff's non-compliance with his course of treatment for pain, § 404.1527(d)(6). The Court finds that the ALJ complied with his statutory obligations and gave "good reasons" for not affording full weight to all of Dr. Burdeaux's findings.

Based on the foregoing, the Court finds that the Plaintiff's argument that the ALJ erred by not affording additional weight to Dr. Burdeaux's findings is not well-taken.

## VI. CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing light work with certain enumerated limitations. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 11]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 13]** be **GRANTED**.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).